Well, good morning. Good afternoon. Aloha. Welcome to the Ninth Circuit. And on behalf of Judge Bybee and myself, I would first like to welcome and thank our colleague Judge Battalion from the District of Nebraska. We truly appreciate his sitting with us in the Ninth Circuit and it would be very, very difficult for us to do our jobs the way we want to without people like Judge Battalion coming and sitting with us. So welcome. I'm sorry, Judge Battalion that it is virtual, but we are delighted to have you with us. Thank you very much. So before we get to the argument calendar, there are a number of cases on the calendar for today that have been submitted without oral argument. United States v. Ferreiro, Hernandez, Rivera v. Garland. And those two cases are submitted. We will take the remaining cases in the order in which they appear on the calendar and we will start with United States v. Is the defendant's name pronounced Saini? Saini. Saini. Saini. Okay. United States v. Saini and counsel whenever you're ready. Thank you. Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellant Gagndeep Saini. And I intend to reserve about two minutes for rebuttal. Your Honors, my plan this morning is to provide erroneous jury instruction regarding an intent to defraud, which is relevant to counts one, two, and three. And with respect to the jury instruction, it was reversible error for the district court to instruct over defendant's objection that intent to defraud is defined merely as an intent to deceive or cheat, rather than as an intent to deceive and cheat or obtain something of value. Mr. Saini had argued that based on the Supreme Court's decision in Shaw, which is a bank fraud case, that the scheme must in fact be one that to see both is as an intent to deceive and to obtain something of value. Mr. Mr. Libby, let's assume we were to agree with you that the district court's instruction was erroneous, especially in light of Miller. Why wasn't the error here harmless? Explain to me, as I understand it, your client's defense was none of this stuff was mine. I'm just How could a rational juror have found that he had the intent to deceive but didn't have the intent to cheat given the guilty verdict on and given your clients actual defense? Sure. Well, so under meter, where defendant has contested and omitted elements as here, raise evidence sufficient to support a contrary finding, then the appellate court should find that the error was in fact not harmless. In a 930 case that I did not actually cite in the brief, but I think is very helpful, is in some ways very similar to this case, United States versus Perez, which was a case from last there, the court, this court discussed how meter sets a very high bar for finding harmlessness beyond a reasonable doubt. But you're, you're, you're not, you're not contending that meter stands for the literal proposition that if your client says, I contest this element, that the error can never be harmless, right? I'm not suggesting it could never be harmless. No, what the court does need to do is look at the entire trial. And, and this is where I would compare this to Perez. So in the press case, what this court said is, there was a government, the government's key witness there had credibility problems. And there were questions regarding extraterritorial application of the Vicar statute, violent crimes and anti-terrorism. The government's key witness disagreed with what the defense's witnesses said, and had serious credibility problems, given his background. In our case, the government relied, what, what, what is it, what is it that your client said that should make us think that this instruction would make a difference? I think that was Judge Bennett's question was, your principal defense was, this wasn't my stuff. And the jury obviously didn't believe that. So there's a conflict there between the government and you as to who owned this stuff. I think you've lost that question in front of the jury, because I don't think the jury could have found your client guilty, if it believed your client that it wasn't his stuff. So given that the jury found that it was his stuff. Now tell us how he didn't, he didn't have that stuff with the the jury could have decided, and again, we don't know for sure what their thought process was, but they certainly could have decided that his presence in the vehicle, and surrounded by all of this material, that that was enough to show that he did in fact have this intent to deceive. But that doesn't deceive, deceive who? I'm sorry? Deceive who? An intent to to deceive the victims of the crime? Deceive the deceive them? How? How would he have the intent to deceive them without cheating them? What what would be the nature of the the deceit that wouldn't involve using this stuff to get their money or property? Well, for one example is Mr. Siddiqui's driver's license. So what Mr. Saini said was, so I had his driver's license, he looked like me, I have lost my driver's So he was using it to deceive by using this false driver's license, this other person's driver's license, but it didn't necessarily show that he was intending to cheat Mr. Siddiqui from anything. What about all that? What about all the rest of the stuff in the car? So yeah, so he, it's possible that the jury could have said, Look, it's possible that that it was deception on your part, when it comes to all of this other material with all these victims that yes, you were involved. But again, deceiving, how? I understand your argument with regard to the person he described as his cousin. But with regard to everything else, I don't, I still don't understand what the deceit would be separated from obtaining money or property by means of the possession. Well, and that's why, frankly, I'm not sure that he should have been necessarily convicted on on that ground either. But it's possible that the jury may have said, Look, yes, you did intend to deceive because you along with Shai, who was actually as far as Saini was concerned, actually running all this stuff that you were there, you know what she was doing, you agreed with what she was doing. And so you were participating to that extent, but you may not have been participating instead of actually trying to obtain money from these victims. And this is where what we had is credibility problems from Shai because the government relied primarily on Shai. She had serious credibility problems. The closing argument from the defense was all about her credibility problems, how, you know, she was a liar and a drug user. And, you know, she had taken drugs just a week before the trial that she she had reasons to lie and make up all of these things. On the other hand, Mr. Saini said, No, I, in fact, was not participating in all of her crimes. And so and and and that the text messages about mailboxing and buying stolen credit cards that the jury might just have believed them believed him that that all of those text messages had nothing to do with his actual intent, even though they were on his phone. Well, they could and there was a dispute whether, in fact, it was his phone. And again, and that's what comes down to. And when you're viewing the harmlessness analysis, you are not this is not a legal sufficiency challenge where you look at the evidence in the light most favorable to the government. You should be looking at the evidence in the light most favorable to the defense and decide, Is there a plausible argument that the defense presented from which the jury could have come up with an alternate conclusion? And of course, the jury was instructed, you know, you can believe part or all or none of of any of these witnesses. You know, there was also credibility problems with respect to the Burbank detectives who actually collected this evidence, who actually arrested Mr. Saini and Mr. Shai. You know, they didn't take any photographs of any of the evidence. They left a lot of the material at the scene. It wasn't actually collected. It's unclear. Did you want to say did you want to save your remaining time? You're down to about a minute and a half. Thank you. Thank you. All right. Counsel, whenever you're ready. Good morning, Your Honors. May it please the court. Charles Fowler for the United States. And I'll jump right into the harmlessness analysis because I do think that that's probably the clearest, easiest way to resolve this case. And I think the Miller case itself, which is the decision of this court that originally found error with regard to the deceive or cheat instruction, really models the proper analysis. The defense actually had presented a theory at trial that involved a purported deceptive intent without intent to cheat. The defense argued that the defendant who had been writing checks from his company to himself actually thought they were legitimate loans. He documented them with deceptive ledger entries, but he never intended to actually steal anything. And yet this court looked at the trial record as a whole and determined that that is not conceivably what they're determined beyond a reasonable doubt that that's not what the jury found. Since Miller, this court has never, conducting that similar analysis, has never reversed based on the type of jury instruction error found in Miller. And I think it's up to something like a half a dozen. Well, counsel, what about what about your friend's argument that at least with regard to the driver's license, the jury could have found that he was using it to deceive people into thinking that he was the person pictured on the driver's license, but that he was not using it to obtain money or property with an intent to defraud? Why isn't that reasonable, at least as to that count? Well, for one thing, your honor, there's no count predicated just on the driver's license. So the one one of the two counts is possession with intent to defraud of 15 or more access devices. The testimony identified 29 of them. And the other count was possession with intent to defraud device making equipment. So I think this court, even if it were to accept that rationale with regard to that particular access device, could easily find beyond a reasonable doubt that that was not the basis of either conviction. But nevertheless, I think given the again, taking the sort of holistic view of the record that the court did in Miller could look at that along with all of the other evidence in the car, especially viewed through the lens of the government's identity theft expert who explained the typical methods of identity theft and the ways that thieves tend to go about these things and use these various types of devices. Of access devices in combination with one another and find beyond a reasonable doubt that the jury could not possibly have accepted that theory. And in any event, it was not a theory that was it was actually argued to the jury. So counsel to change direction here a little bit. Is the government's position still that the ruling Miller is inapplicable to the statute here and that the instruction given by the trial court was actually correct? It is indeed, Your Honor, and I think the centerpiece of the government's argument there is starting as always with the statutory text and the evolution, I think, of the two statutes, the bank fraud statute addressed in Shaw and then wire fraud and mail fraud addressed in Miller, on the other hand, evolved very independently of 1029, which is the access device statute in issue here. And as a result, they've got a phrase, a key phrase, which is or to obtain money or property by false representations, promises, pretenses. They all share that that key language that was added to the mail fraud statute in 1909. And in United States versus McNally in 1987, the Supreme Court explained that language. It really is is a limitation on the words that preceded the words scheme to defraud. And down the road in 1970, when Congress enacted the predecessor to 1029, it used a very different construction. It used a different mens rea, which was with unlawful or fraudulent intent. And then in 1984, that language became with intent to defraud. Yeah. And for example, the Senate report says with intent to defraud means that the offender has an intent to deceive and to induce such other person in reliance to assume, create, transfer, alter or terminate a right obligation or power with reference to property. I mean, to me, intent to defraud is not a vague term in the first place. But when one looks at it with the overlay of the legislative history, why wouldn't the natural reading of that be to obtain property? Well, for one thing, the the Senate report that your honor references, I think, actually gives a broader conception of intent to defraud than this court in the Supreme Court have given to that phrase in the wire fraud, mail fraud, bank fraud context. It includes any kind of altering or incurring or it's very broad, assuming, creating, transferring any kind of obligation, right, etc. with reference to property. But in the mail fraud context, which is the line of precedent that the defense wants to extend to 1029 here, that's a very specific meaning that the courts have ascribed to cheat there. It's an intended transfer from the victim to the defendant. And I think that the that the Senate report, it contemplates something much broader. In our brief, for example, we talked about, you know, maybe somebody gets accumulates a bunch of credit cards or a bunch of personal identifying information without the intent to actually take for himself anything from the victim at all, but instead to ruin the person's credit. It could be opening 50 or 100 credit lines. It could be closing credit lines. It could be by incurring charges that are not necessarily meant to go to the fraudster himself. But that would nevertheless create, alter, resume, etc. an obligation with reference to property. Is there any court of appeals that has accepted that construction? There's not, Your Honor. This would be the first. The only other case really addressing the issue presented here is the Eppolito case from the 11th Circuit 2017. It's an unpublished order, and it doesn't really it doesn't really go through the analysis in a lot of detail. It doesn't really consider the legislative history. It simply says that the court had never held in the context of 1029 that an intent to obtain value is required, and therefore it found no plain error in that case. And it would be based on a similar instruction to what the jury received here. So it's kind of a novel question, and so I think it's all the more important for that reason to really sort of consider whether it makes sense in the context of the way these statutes evolved sort of independently. The statute was meant to broaden the federal criminal laws as applied to access devices. It was intended to fill gaps in prior law, which was the Truth in Lending Act 15 U.S.C. 1644. And this court, for that reason, in some of the cases cited in the government's brief, has consistently given it a broad construction. And I think that broad construction makes sense with respect to the intent element as well for all the reasons we've stated. So if the court has nothing further, we would just ask that the judgment be affirmed. Either of my colleagues have any questions? No. Well, I do want to follow up on the credit card example, the one where you think that somebody may have the intent to doesn't have the intent to take anything because they just want to ruin somebody's credit. Can you think of any other example? That's an interesting point, and I'm wondering whether careful construction of that might say, well, it may be to someone's advantage to have somebody else's credit ruined. It may have a revenge motive or something else. We filched their good name, and therefore we've taken something of value from them. That would be a fairly broad construction of the obtain something of value. But I'm wondering if you can give me any other example other than the ruining someone's credit. Sure. Well, I think defense counsel actually proposed one. I don't think it's one that the jury could have found on the record here, but I think you could engage, conceivably could engage, in a deceptive use of access devices with respect to identifying oneself as someone else, even without necessarily intending to steal from them. So I think that would be an example. And I think that's something Congress, I think even the defense perhaps suggested, that's something Congress would have meant to cover by this statute that didn't involve cheating the victim out of something. All right. Thank you. Counsel, we'll put two minutes on the clock for you. Thank you, Your Honor. So first, with respect to the instruction itself and whether or not Santee Court has ever actually addressed this, with respect, the opposing counsel is simply wrong when it says only Eppolito. Eppolito is the only case to really address it, and it said that it applies to access device fraud. In fact, as we pointed out, the Eleventh Circuit in United States v. Lee expressly stated that Intent to Defraud applies to access device fraud as well as the other forms of fraud. And it relied on older case law from the Eleventh Circuit and the Older Circuit, which, before it was split, involving access device cases and old credit card fraud statutes to say that there needs to, in fact, be deprivation of something of value from the victim. So this is not something new. And the Fourth Circuit has expressly said that both the bank fraud statute and the unauthorized use of an access device statute have the same exact intent to defraud and must be treated identically. That's in the Banks-Davis decision that we cited. So the government's simply wrong to say no courts ever addressed this. Multiple courts have, in fact, addressed this. I'd also point out honest services fraud. In the Skilling case, the Supreme Court said for honest services fraud, we're not going to agree with what some other courts have said counts as honest services fraud. We're only going to apply it to bribe and kickback schemes, which involve deprivation of something of value. So I would submit this really isn't a close question. An intent to defraud means what it means, which is there must be deprivation of something of value. But you would agree, then, that if somebody took credit cards and engaged in a fraudulent use of the credit cards in order to ruin someone's credit, that that would not come within the statute. It's not punishable under the current statutes. I don't think it is. It's not entirely clear, but I don't believe it would be. And I see I'm over time. All right. No, thank you. We thank counsel for their arguments. And the case just argued will be submitted. The case on the calendar is
judges: BYBEE, BENNETT, Bataillon